# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| TOXCO INC., | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 09-1925 |
| | : | | |
| v. | : | Re Document Nos.: 3, 7, 15 |
| | : | | |
| STEVEN CHU, | : | | |
| in his official capacity as Secretary of | : | | |
| the U.S. Department of Energy, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### DENYING THE DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED; DENYING THE PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION; DENYING AS MOOT THE PLAINTIFF'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL INFORMATION

## I. INTRODUCTION

The plaintiff, Toxco Inc., operates a waste disposal facility in Tennessee. It has brought this action pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 553 *et seq.*, and the due process clause of the Fifth Amendment, challenging the Department of Energy's ("DOE") withdrawal of its consent to a subcontract entered into by the plaintiff. This matter is now before the court on the plaintiff's motion for a preliminary injunction and the defendant's motion to dismiss for failure to state a claim. The plaintiff seeks a preliminary injunction requiring the DOE to reinstate its consent to the plaintiff serving as a subcontractor on a DOE environmental clean-up project in Niskayuna, New York. The defendant opposes the entry of a preliminary injunction and has filed a Rule 12(b)(6) motion to dismiss. Because the plaintiff has failed to demonstrate that it will suffer irreparable harm absent injunctive relief and has not shown a likelihood of success on the merits, the court denies the plaintiff's motion for a

preliminary injunction. Because, however, the court cannot conclude at this stage of the litigation that the plaintiff has no entitlement to relief under the APA or the due process clause of the Fifth Amendment, the court denies the defendant's motion to dismiss.[1]

## II. BACKGROUND

### A. Factual Background

Until 2000, the DOE operated a research facility known as the Separation Process Research Unit ("SPRU") in Niskayuna, New York, which was used for research on the separation of atomic isotopes. Pl.'s Mot. for a Prelim. Inj. ("Pl.'s Mot.") at 3. Although the SPRU facility has been largely unused since 2000, the research performed there resulted in radioactive contamination of the facilities and the surrounding soil. *Id*. In October 2004, the DOE engaged Accelerated Remediation Company ("ARC") to return the site to a usable condition. *Id*.; Def.'s Consolidated Opp'n to Pl.'s Prelim. Inj. Mot. & Mot. to Dismiss for Failure to State a Claim ("Def.'s Mot.") at 3. The work performed by ARC was to include the removal of contaminated soils, building debris and other waste materials containing low levels of radioactive contamination and disposing of these materials at qualified locations. Pl.'s Mot. at 3.

In September 2007, the DOE issued a task order to ARC for the rehabilitation of the lower level railbed area and the lower level parking lot of the SPRU facility ("the SP-15 Task

---

[1]     The plaintiff has also filed a motion for leave to file supplemental information in opposition to the defendant's motion to dismiss. Because, as discussed below, the court denies the defendant's motion to dismiss without consideration of this supplemental information, the court denies as moot the plaintiff's motion for leave to file. *See Nat'l Credit Counseling Servs., Inc. v. United States*, 2008 WL 5413163, at *2 (D.D.C. Oct. 15, 2008) (denying without prejudice the plaintiff's motion for partial summary judgment and, consequently, denying as moot the plaintiff's motion for leave to file a supplemental memorandum of law in support of its motion for summary judgment); *see also Banks v. Office of Senate Sergeant-at-Arms*, 233 F.R.D. 1, 11 (D.D.C. 2005) (denying as moot the plaintiff's motion for leave to file a supplemental filing because the court had already ruled on the motion to which the supplemental filing was related).

Order"). Def.'s Mot. at 3. The SP-15 Task Order made ARC responsible for disposing of any waste generated by the remediation project and authorized ARC to use "existing contractual instruments between the Federal Government and waste disposal facilities . . . when disposing of waste unless [ARC could] obtain more favorable cost arrangements." *Id.*, Decl. of Marilyn Long ("Long Decl."), Ex. 1 at C-12.

In February 2009, the American Recovery and Reinvestment Act provided $37 million of funding to DOE to accelerate the rehabilitation of the SPRU site. Pl.'s Mot. at 4. As a result, in May 2009, ARC issued a request for subcontractors to submit proposals for the disposal of waste generated through work on the SP-15 Task Order containing low levels of radioactive contamination. *Id.* The plaintiff submitted a proposal in June 2009, and ARC determined that the plaintiff was the lowest-cost, qualifying bidder. *Id.*

The federal acquisition regulations in force at the time required agency consent for certain subcontracts entered into by a contractor without an approved purchasing system. Def.'s Mot. at 12-13. Furthermore, DOE Order 435.1 required a contractor to obtain an exemption from the DOE before disposing of radioactive waste at a non-DOE facility. *Id.* at 13. Both provisions applied to the plaintiff's proposed subcontract with ARC. *Id.* at 12-13. Accordingly, in July 2009, ARC requested DOE's consent to a subcontract between itself and the plaintiff. Pl.'s Mot. at 5-6.

On August 11, 2009, the DOE provided its formal consent to the subcontract in a letter from Marilyn Long, a DOE contracting officer. *See id.*, Aff. of David Eaker ("Eaker Aff."), Ex. 9. The same day, the plaintiff and ARC executed a subcontract for the disposal of low-level radioactive material pursuant to the SP-15 Task Order. *See generally* Eaker Aff., Ex. 10 ("Toxco Purchase Order"). The subcontract expressly incorporated several contractual provisions set

forth in federal acquisition regulations, including Federal Acquisition Regulation ("FAR") § 52.249-2. *See id.* at 3. That regulation contained a contractual provision entitled "Termination for Convenience of the Government," which provided, in relevant part, that "[t]he Government may terminate performance of work under this contract in whole or, from time to time, in part if the Contracting Officer determines that a termination is in the Government's interest." 48 C.F.R. § 52.249-2(a). The provision further specified that upon the delivery of the government's notice of termination to the prime contractor, the prime contractor shall, "[w]ith approval or ratification to the extent required by the Contracting Officer, settle all outstanding liabilities and termination settlement proposals arising from the termination of subcontracts; the approval or ratification will be final for purposes of this clause." *Id.* § 52.249-2(b)(5).

After executing the subcontract, the plaintiff began to undertake its processing and disposal duties as set forth in the agreement. Pl.'s Mot. at 6. Yet on August 19, 2009, eight days after providing written consent to the plaintiff's subcontract, the DOE issued a notice to ARC that it had rescinded its consent to the plaintiff's subcontract. Eaker Aff., Ex. 13 at 1. The notice contained no explanation for the DOE's withdrawal of consent. *See id.* The withdrawal forced ARC to terminate its subcontract with the plaintiff. Pl.'s Mot. at 6-7.

**B. Procedural History**

The plaintiff commenced this action in October 2009, asserting that the DOE's withdrawal of consent constituted an arbitrary and capricious agency action in violation of the APA, and deprived it of property without due process of law in violation of the Fifth Amendment. *See generally* Compl. The plaintiff also moved for a preliminary injunction requiring the DOE to rescind its withdrawal and reinstate its consent to the plaintiff's subcontract with ARC. *See generally* Pl.'s Mot.

The defendant responded by filing a consolidated opposition to the plaintiff's motion for a preliminary injunction and a Rule 12(b)(6) motion to dismiss for failure to state a claim. *See generally* Def.'s Mot. In its motion to dismiss, the defendant argues that the plaintiff's APA claims must be dismissed because the DOE's decision to withdraw its consent was a matter committed to agency discretion by law and because the plaintiff has an alternative adequate remedy to APA review in the form of a breach of contract action against ARC. *Id.* at 12-14. Furthermore, the defendant argues that the plaintiff's due process claim must be dismissed because the subcontract did not give rise to a protectable property interest for Fifth Amendment purposes. *Id.* at 14-15.

On November 9, 2009, the plaintiff filed a document entitled "Reply Memorandum in Support of Toxco's Motion for Preliminary Injunction." *See generally* Pl.'s Reply. The reply memorandum made no explicit reference to the defendant's motion to dismiss and failed to address numerous arguments contained in that motion. *See generally id.* After the plaintiff failed to file a response to the defendant's motion by the applicable deadline, the court ordered the plaintiff to show cause why the defendant's motion to dismiss should not be granted as conceded. Order (Dec. 1, 2009).

The plaintiff responded to the show cause order on December 4, 2009. *See generally* Pl.'s Response to Dec. 1, 2009 Order ("Pl.'s Resp."). In its response, the plaintiff asserted that its reply memorandum in support of its motion for a preliminary injunction had "addressed the Defendants' arguments, including substantively the arguments underlying the motion to

dismiss."[2]  *Id.* at 2.  The plaintiff proceeded to "summarize" its responses to the arguments made by the defendant in its motion to dismiss.  *Id.*  As noted below, the "summary" provided responses to certain arguments raised in the defendant's motion that were not addressed in the plaintiff's reply memorandum.  *See generally id.*

On December 7, 2009, the court advised the parties that it would treat the plaintiff's response to the order to show cause and its reply memorandum in support of its motion for a preliminary injunction as its opposition to the defendant's motion to dismiss.  Order (Dec. 7, 2009).  The defendant subsequently filed a reply in support of its motion to dismiss.  *See generally* Def.'s Reply.  As the defendant's motion to dismiss and the plaintiff's motion for a preliminary injunction are now ripe for disposition, the court turns to the applicable legal standards and the parties' arguments.

## III.  ANALYSIS

### A.  The Court Denies the Defendant's Rule 12(b)(6) Motion to Dismiss

#### 1.  Legal Standard for Rule 12(b)(6) Motion to Dismiss

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint.  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests.  *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing Fed. R. Civ. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  "Such simplified notice pleading is made possible by the liberal opportunity for discovery and the other pretrial

---

[2]     The plaintiff asserted that "its Reply Memorandum was styled as a reply to the motion to dismiss and to the opposition to the preliminary injunction," Pl.'s Resp. at 2 n.1, despite the fact that the reply memorandum was titled "Reply Memorandum in Support of Toxco's Motion for Preliminary Injunction" and made no explicit reference to the defendant's motion to dismiss, *see generally* Pl.'s Reply.

procedures established by the Rules to disclose more precisely the basis of both claim and defense to define more narrowly the disputed facts and issues." *Conley*, 355 U.S. at 47-48 (internal quotation marks omitted). It is not necessary for the plaintiff to plead all elements of his prima facie case in the complaint, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-14 (2002), or "plead law or match facts to every element of a legal theory," *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000) (internal quotation marks and citation omitted).

Yet, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (abrogating the oft-quoted language from *Conley*, 355 U.S. at 45-46, instructing courts not to dismiss for failure to state a claim unless it appears beyond doubt that "no set of facts in support of his claim [] would entitle him to relief"). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

In resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual allegations – including mixed questions of law and fact – as true and draw all reasonable inferences therefrom in the plaintiff's favor. *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003); *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). While many well-pleaded complaints are conclusory, the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations.

*Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004); *Browning*, 292 F.3d at 242.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).

## 2.  The Court Denies the Defendant's Motion to Dismiss the Plaintiff's APA Claim

### a.  The Defendant Has Not Demonstrated that the DOE's Withdrawal of Consent Was a Matter Committed to Agency Discretion by Law

The defendant contends that the DOE's decision to withdraw consent to the plaintiff's

subcontract is unreviewable under the APA because it was a matter committed to agency

discretion by law.  Def.'s Mot. at 12-13; Def.'s Reply at 2-4.  According to the defendant, the

regulations governing ARC's request for consent to the plaintiff's subcontract provide the DOE

unfettered discretion to grant, withhold or withdraw consent to subcontracts like the one at issue

here.  Def.'s Mot. at 12-13; Def.'s Reply at 2-3.  Because the APA does not apply to agency

actions "committed to agency discretion by law," 5 U.S.C. § 701(a)(2), the defendant contends

that the plaintiff's APA claim should be dismissed, Def.'s Mot. at 12-13; Def.'s Reply at 2-3.

The plaintiff does not address the defendant's § 701(a)(2) argument in its reply in support

of its motion for a preliminary injunction.  *See generally* Pl.'s Reply.  Although the plaintiff does

acknowledge the argument in its response to the order to show cause, it responds merely by

stating that "discretion does not equal fickleness, but must reflect appropriate, non-arbitrary

decision-making."  Pl.'s Resp. at 4.

The APA "embodies the basic presumption of judicial review to one 'suffering legal

wrong because of agency action, or adversely affected or aggrieved by agency action within the

meaning of a relevant statute.'"  *Abbott Labs. v. Gardner*, 387 U.S. 136, 140 (1967) (citing 5

U.S.C. §§ 701-02) (internal citations omitted); *see also Fekete v. U.S. Steel Corp.*, 424 F.2d 331,

334-35 (3d Cir. 1970) (observing that "judicial review of . . . administrative action is the rule,

and nonreviewability an exception which must be demonstrated" (quoting *Barlow v. Collins*, 397 U.S. 159, 166 (1970))). This presumption may be overcome by demonstrating that a challenged action was "committed to agency discretion by law." *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993) (citing 5 U.S.C. § 701(a)(2)). Section 701(a)(2) represents a "very narrow exception" to the presumption of reviewability and applies in those "rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 410 (1971) (quoting S. Rep. No. 752, 79th Cong., 1st Sess., 26 (1945)); *accord Heckler v. Chaney*, 470 U.S. 821, 830 (1985) (observing that § 701(a)(2) applies in cases in which a "statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion"). The rationale underlying the statutory exemption is clear: "if no judicially manageable standards are available for judging how and when an agency should exercise its discretion, then it is impossible to evaluate agency action for 'abuse of discretion.'" *Heckler*, 470 U.S. at 830.

Statutory standards need not be drawn with a high degree of specificity to fall outside the narrow bounds of § 701(a)(2). *See Robbins v. Reagan*, 780 F.2d 37, 45 (D.C. Cir. 1985) (stating that "[w]hile the absence of clear statutory guidelines might at times hamper a court's ability to deem agency action contrary to law, it need not always do so"). As this Circuit has noted,

> [e]ven where there are no clear statutory guidelines, courts often are still able to discern from the statutory scheme a congressional intention to pursue a general goal. If the agency action is found not to be reasonably consistent with this goal, then the courts must invalidate it. The mere fact that a statute grants broad discretion to an agency does not render the agency's decisions completely nonreviewable under the "committed to agency discretion by law" exception unless the statutory scheme, taken together with other relevant materials, provides absolutely no guidance as to how that discretion is to be exercised.

*Id.* (internal citations omitted).

These authorities make clear that when assessing whether a matter is committed to agency discretion for purposes of § 701(a)(2), the court must undertake an examination of the statutory scheme governing the agency's exercise of authority.  *See Webster v. Doe*, 486 U.S. 592, 600 (1988) (noting that "[b]oth *Overton Park* and *Heckler* emphasized that § 701(a)(2) requires careful examination of the statute on which the claim of agency illegality is based"); *see also, e.g.*, *Overton Park*, 401 U.S. at 410-11 (concluding that the Secretary of Transportation's approval of the construction of an expressway through a public park did not fall within § 701(a)(2) because the statutes delegating that authority to the Secretary provided guidelines circumscribing the Secretary's discretion to approve projects requiring the use of public park lands); *Ramah Navajo Sch. Bd., Inc. v. Babbitt*, 87 F.3d 1338, 1343 (D.C. Cir. 1996) (observing, in considering whether a challenged administrative action was committed to agency discretion by law, that "[t]he key to any determination of reviewability is congressional intent"); *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Donovan*, 746 F.2d 855, 863 (D.C. Cir. 1984) (holding that § 701(a)(2) barred judicial review of the manner in which the Secretary of Labor distributed certain appropriated funds, given the absence of any legislative guidance as to how those funds were to be distributed); *Wildearth Guardians v. Kempthorne*, 592 F. Supp. 2d 18, 25-26 (D.D.C. 2008) (concluding that the Secretary of the Interior's decision not to issue an emergency listing of threatened or endangered species was unreviewable under § 701(a)(2) because the Endangered Species Act gave the Secretary the authority – but not the duty – to list species on an emergency basis) (citing 16 U.S.C. § 1533(b)(7)); *Nation v. Dalton*, 107 F. Supp. 2d 37, 44 (D.D.C. 2000) (holding that the removal of a Naval reserve officer from a promotion list was a matter committed to the Secretary of the Navy's discretion by law because the statutory delegation of authority "place[d] no limitation on the Secretary's authority to

remove an officer from a promotion list prior to a promotion, and provide[d] no standard by which to evaluate the Secretary's exercise of his removal authority") (citing 10 U.S.C. § 5905).

Although the defendant argues that its own regulations and guidelines place no limitations on its discretion to grant, withhold or withdraw consent to subcontracts like the one at issue, it has not identified – much less carefully examined – the legislative enactments pursuant to which the DOE granted, and then rescinded, its consent to the plaintiff's subcontract. *See* Def.'s Mot. at 12-13; Def.'s Reply at 2-4. Accordingly, the defendant has not demonstrated that "the *statutory* scheme, taken together with other relevant materials, provides absolutely no guidance as to how that discretion is to be exercised."[3] *Robbins*, 780 F.2d at 45 (emphasis added); *see also Cody v. Cox*, 509 F.3d 606, 610 (D.C. Cir. 2007) (noting that "[t]o prevail" under § 701(a)(2), "defendants must rebut the presumption that agency action is judicially reviewable by showing 'the relevant *statute* is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion'" (quoting *Lincoln*, 508 U.S. at 191)) (emphasis added). Because the defendant has not met this burden and overcome the presumption that its action is reviewable, the court denies its motion to dismiss the defendant's APA claim under § 701(a)(2).

### b. The Defendant Has Not Demonstrated That the Plaintiff Possesses an Alternative Adequate Remedy to Judicial Review

The defendant contends that the plaintiff's APA claim must be dismissed because the APA does not provide for judicial review of agency action unless there is no other adequate

---

[3]    The court also notes that the plaintiff's APA claim "does not fall into one of the narrow categories that usually satisfies the strictures of subsection 701(a)(2)." *Cody v. Cox*, 509 F.3d 606, 610 (D.C. Cir. 2007) (noting that § 701(a)(2) has most often been applied in cases involving review of executive branch decisions involving complicated foreign policy matters, an agency's refusal to undertake an enforcement action or an agency's determination about how spend a lump-sum appropriation (citing *Lincoln v. Vigil*, 508 U.S. 182, 192 (1993); *Heckler v. Chaney*, 470 U.S. 821, 831 (1985); *Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State*, 104 F.3d 1349, 1353 (D.C. Cir. 1997))).

remedy available to the aggrieved party. Def.'s Mot. at 13. The defendant asserts that because the plaintiff can pursue a breach of contract claim against ARC or seek relief from ARC through the "termination for convenience" provision of the subcontract,[4] it has an adequate remedy to redress any injury that purportedly resulted from the defendant's withdrawal of consent to the subcontract. *Id.* at 13-14. In its response to the court's order to show cause, the plaintiff states that it cannot obtain relief through a breach of contract action against ARC because ARC's termination of the subcontract resulted solely from the defendant's withdrawal of consent. Pl.'s Resp. at 5-6. The plaintiff also argues that it cannot obtain relief from ARC under the "termination for convenience" provision because that provision has no effect on "unit price" contracts like the plaintiff's subcontract, and "because termination for convenience was never presented to Toxco as the reason for DOE's withdrawal of consent to the Toxco subcontract." *Id.* at 6; *see also* Pl.'s Reply at 5-6.

"Review under the APA is . . . limited to 'final agency action for which there is no other adequate remedy in a court.'" *Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 18 (D.C. Cir. 2006) (quoting 5 U.S.C. § 704) (emphasis omitted).[5] The availability of a private right of action may supply an alternative adequate remedy precluding judicial review. *See Garcia v. Vilsack*, 563 F.3d 519, 523 (D.C. Cir. 2009) (observing that relief "will be deemed adequate 'where there is a private cause of action against a third party otherwise subject to agency regulation'" (quoting *El Rio Santa Cruz Neighborhood Health Ctr. v. U.S. Dep't of*

---

[4]     As noted, the "termination for convenience" clause incorporated into the subcontract requires ARC to "settle all outstanding liabilities and termination settlement proposals arising from the termination of subcontracts; the approval or ratification will be final for purposes of this clause." *See* Toxco Purchase Order at 3 (incorporating by reference 48 C.F.R. § 52.249-2).

[5]     Although a plaintiff must satisfy the requirements of 5 U.S.C. § 704 to have a valid cause of action under the APA, the court's jurisdiction does not hinge on the section. *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 184-85 (D.C. Cir. 2006).

*Health & Human Servs.*, 396 F.3d 1265, 1271 (D.C. Cir. 2005))); *see also Godwin v. Sec'y of Hous. & Urban Dev.*, 356 F.3d 310, 312-13 (D.C. Cir. 2004) (holding that the plaintiff had no claim under the APA because it had an adequate alternative remedy through a private suit directly against the wrongdoer); *accord Wash. Legal Found. v. Alexander*, 984 F.2d 483, 487 (D.C. Cir. 1993). The Circuit has explained that "the alternative remedy need not provide relief identical to relief under the APA, so long as it offers relief of the 'same genre.'" *Garcia*, 563 F.3d at 522 (citing *El Rio*, 396 F.3d at 1272). An alternative remedy, however, "will not be adequate under § 704 if the remedy offers only 'doubtful and limited relief.'" *Id.* (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 901 (1988)). Indeed, this Circuit has cautioned that "[i]n evaluating the availability and adequacy of alternative remedies . . . the court must give the APA 'a hospitable interpretation' such that 'only upon a showing of clear and convincing evidence of a contrary legislative intent should the courts restrict access to judicial review.'" *Id.* at 523 (quoting *Abbott Labs.*, 387 U.S. at 141) (internal quotation marks omitted).

It is not clear, at least at this stage of the litigation, that the "termination for convenience" provision of the subcontract provides the plaintiff an alternative adequate remedy so as to preclude review under the APA. As an initial matter, there remains some question as to the applicability of the "termination for convenience" clause. The defendant offers scant response to the plaintiff's assertion that the "termination for convenience" provision has no effect because, by its express terms, it applies only to "fixed price" contracts, whereas the subcontract is a "unit price" contract. *See* Pl.'s Reply at 5 n.1; Def.'s Reply at 5. Furthermore, the defendant has not explained how the remedies available under the termination for convenience provision would provide an alternative adequate remedy so as to satisfy the requirements of 5 U.S.C. § 704. *See* Def.'s Mot. at 14; Def.'s Reply at 5-6. Because the applicability and effect of the termination for

convenience clause remain unclear, the court cannot conclude, at this juncture, that it provides the plaintiff an adequate alternative to judicial review under the APA.

The court reaches a similar conclusion with respect to the availability of a breach of contract action against ARC.[6]  According to the defendant, the plaintiff "offers no explanation for why it would not be able to assert a claim against ARC for damages arising out of the termination of the contract, leaving ARC to in turn seek redress from the Government if ARC should so determine necessary."  Def.'s Reply at 5.  The defendant appears to be suggesting that the plaintiff could obtain adequate relief through a "pass-through" suit, in which "a prime contractor . . . assert[s] against the government a claim for harm caused by the government to a subcontractor where the subcontractor could hold the prime contractor liable for that harm." *Int'l Tech. Corp. v. Winter*, 523 F.3d 1341, 1347 (Fed. Cir. 2008); *see also Metric Constructors v. United States*, 314 F.3d 578, 581 (Fed. Cir. 2002) (observing that "[i]n a pass-through suit, a prime contractor that is liable for damages sustained by its subcontractor may bring claims against the government on behalf of the subcontractor"); *E.R. Mitchell Constr. Co. v. Danzig*, 175 F.3d 1369, 1373-74 (Fed. Cir. 1999) (holding that a subcontractor could recover its costs through a pass-through suit brought against the government by the prime contract for the subcontractor's losses resulting from delay caused by the government).

In its cursory discussion of the matter, however, the defendant fails to demonstrate that the plaintiff could obtain an alternative adequate remedy through a claim against ARC, or even that such a claim is available to the plaintiff.  *See* Def.'s Mot. at 14; Def.'s Reply at 4-5.  Indeed, the defendant offers no response to the plaintiff's assertion that "ARC cannot be sued under a breach of contract claim because ARC is not responsible for DOE's withdrawal of consent to the

---

[6]    It is undisputed that the plaintiff cannot pursue a breach of contract action directly against the defendant because it is not in contractual privity with the defendant.  *See* Def.'s Reply at 5; Pl.'s Resp. at 6.

Toxco subcontract."[7]  Pl.'s Resp. at 5; *see* Def.'s Reply at 4-5.  Because it is the defendant has not met its burden of showing by clear and convincing evidence that § 704 bars the plaintiff's APA claim, *see Garcia*, 563 F.3d at 523, the court denies the defendant's motion to dismiss the plaintiff's APA claim based on the availability of an alternative adequate remedy.

### 3.  The Court Denies the Defendant's Motion to Dismiss the Plaintiff's Due Process Claim

The defendant asserts that the plaintiff's due process claim must be dismissed because the alleged property interest underlying the claim arises out of its subcontract with ARC to which the defendant was not a party.  Def.'s Mot. at 14-15; Def.'s Reply at 6-7.  This interest, the defendant argues, is not sufficient to trigger the Fifth Amendment's due process protections.  Def.'s Mot. at 14-15; Def.'s Reply at 6-7.  The plaintiff maintains that its subcontract with ARC gave rise to a protectable property interest for due process purposes.  Pl.'s Resp. at 6-7; *see also* Pl.'s Mot. at 11-12; Compl. ¶¶ 29-32.  By rescinding its consent to the subcontract without notice, explanation or an opportunity to respond, the plaintiff argues, the defendant deprived the plaintiff of its property without due process of law, in violation of the Fifth Amendment.  Pl.'s Mot. at 11-12; *see also* Pl.'s Resp. at 6-7; Compl. ¶¶ 30-31.

To state a claim for deprivation of property without due process of law, the plaintiff must possess a property interest that triggers the Fifth Amendment's due process protections.  *C&E Servs., Inc. of Wash. v. D.C. Water & Sewer Auth.*, 310 F.3d 197, 200 (D.C. Cir. 2002) (citing *Reeve Aleutian Airways, Inc. v. United States*, 982 F.2d 594, 598 (D.C. Cir. 1993)).  Such interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  *Id.* (quoting *Bd. of Regents of*

---

[7]      It should be noted, however, that the plaintiff points to no legal authority or provisions in the subcontract substantiating its assertion that it has no contractual claim against ARC.  *See* Pl.'s Resp. at 5-6.

*State Colls. v. Roth*, 408 U.S. 564, 577 (1972)).  "[T]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577.

As noted, the defendant suggests that the plaintiff did not have a protectable property interest for Fifth Amendment purposes because the defendant was not a party to the subcontract between ARC and the plaintiff.  *See* Def.'s Mot. at 15.  The defendant, however, points to no authority indicating that only government contracts are entitled to due process protections.  *See id.*; Def.'s Reply at 6-8.  To the contrary, numerous courts have held that contracts between private parties may give rise to property interests sufficient to trigger Fifth Amendment due process protections.  *See Greene v. McElroy*, 360 U.S. 474, 492-93& n.22 (1959) (observing that the petitioner was permitted to bring a due process challenge to the government's revocation of his security clearance, which led to the termination of his employment with a private manufacturer that contracted with the government); *Wilson v. MVM, Inc.*, 475 F.3d 166, 178 (3d Cir. 2007) (holding that a private employment contract containing a "just cause" termination clause could give rise to a constitutionally protected property interest); *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., Local 737 v. Auto Glass Employees Fed. Credit Union*, 72 F.3d 1243, 1250 (6th Cir. 1996) (observing that "property interests protected by the Fifth Amendment may be created by virtue of purely private contractual agreements" (citing *FDIC. v. Mallen*, 486 U.S. 230, 240 (1988); *Brock v. Roadway Express*, 481 U.S. 252, 260-61, (1987); *Greene*, 360 U.S. at 492-93& n.22)); *see also Stein v. Bd. of City of N.Y., Bureau of Pupil Transp.*, 792 F.2d 13, 17 (2d Cir. 1986) (observing that "[w]here an independent source of a property interest is a private contract, the state cannot transgress on the claim of entitlement to

continue employment without due process of law").  Accordingly, the mere fact that the subcontract was a private agreement to which the DOE was not a party does not, standing alone, mean that the subcontract could not give rise to a property interest subject to due process protections.[8]

It is, of course, not the case that every contract triggers due process protections.  *See, e.g.*, *Unger v. Nat'l Residents Matching Program*, 928 F.2d 1392, 1398 (3d Cir. 1991) (noting that "[e]ven though every contract may confer some legal rights under state law, that fact alone need not place all contracts within federal due process protection").  Indeed, in its reply memorandum, the defendant vaguely alludes to an alternative argument for dismissal of the plaintiff's due process claim: that the subcontract did not give rise to a property interest because the government retained the authority to rescind its consent.  Def.'s Reply at 7-8; *see also Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005) (noting that "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion" (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 462-63 (1989))); *Hall v. Ford*, 856 F.2d 255, 265 (D.C. Cir. 1988) (dismissing the plaintiff's due process claim arising out of the termination of his employment contract on the grounds that "[t]hose who are terminable at will have no property

---

[8]     *Lockheed Martin Corp. v. United States*, 50 Fed. Cl. 550 (2001), a case on which the defendant relies, does not dictate a different result.  In *Lockheed*, a subcontractor brought suit against the DOE after the prime contractor terminated the subcontractor from the project for default.  *Id.* at 552.  The court dismissed the subcontractor's takings claim not because it lacked a protectable property interest but because the subcontractor had an adequate remedy to vindicate its rights in the form of a contract action against the prime contractor.  *Id.* at 566 (distinguishing *Castle v. United States*, 48 Fed. Cl. 187 (2000), on the grounds that that decision "suggest[ed] a taking might be present if the government deprived a party of *all* avenues to vindicate a contract right"); *see also Lujan v. G&G Fire Sprinklers, Inc.*, 532 U.S. 189, 196 (2001) (denying the subcontractor's due process claim because even if the subcontract gave rise to a protectable property interest, that interest could "be fully protected by an ordinary breach-of-contract suit").  If the defendant ultimately establishes that the plaintiff's rights could be protected through a breach of contract action against ARC, *Lockheed* would provide some support for dismissal of the plaintiff's due process claim.  The case does not, however, support the defendant's assertion that a private subcontract categorically cannot give rise to a property interest subject to due process protections.

17

interest because there is no objective basis for believing that they will continue to be employed indefinitely"); *Roth*, 408 U.S. at 577-78 (holding that no property interest arises when a contract for a limited term of employment expires and is not renewed); *Ferrone v. Onorato*, 298 Fed. Appx. 138, 139-40 (3d Cir. 2008) (holding that a borrower did not have a protected property interest in loan funds because the loan agreement gave the lender the discretion to grant or deny disbursement of funds). Because, however, this argument was raised for the first time in the defendant's reply memorandum, depriving the plaintiff an opportunity to respond, the court will not consider it here. *See Aleutian Pribilof Islands Ass'n, Inc. v. Kempthorne*, 537 F. Supp. 2d 1, 12 n. 5 (D.D.C. 2008) (noting that "it is a well-settled prudential doctrine that courts generally will not entertain new arguments first raised in a reply brief" (citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 196 (D.C. Cir. 1992))). Accordingly, the court denies the defendant's motion to dismiss the plaintiff's due process claim.

### B. The Court Denies the Plaintiff's Motion for a Preliminary Injunction

#### 1. Legal Standard for a Preliminary Injunction

This court may issue interim injunctive relief only when the movant demonstrates "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 374 (2008) (citing *Munaf v. Geren*, 128 S. Ct. 2207, 2218-19 (2008)). It is particularly important for the movant to demonstrate a likelihood of success on the merits. *Cf. Benten v. Kessler*, 505 U.S. 1084, 1085 (1992) (per curiam). Indeed, absent a "substantial indication" of likely success on the merits, "there would be no justification for the court's intrusion into the ordinary

processes of administration and judicial review." *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 38 F. Supp. 2d 114, 140 (D.D.C. 1999) (internal quotation omitted).

The other critical factor in the injunctive relief analysis is irreparable injury. A movant must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 129 S. Ct. at 375 (citing *Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983)). Indeed, if a party fails to make a sufficient showing of irreparable injury, the court may deny the motion for injunctive relief without considering the other factors. *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995). Provided the plaintiff demonstrates a likelihood of success on the merits and of irreparable injury, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987). Finally, "courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982).

As an extraordinary remedy, courts should grant such relief sparingly. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). The Supreme Court has observed "that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Id.* Therefore, although the trial court has the discretion to issue or deny a preliminary injunction, it is not a form of relief granted lightly. In addition, any injunction that the court issues must be carefully circumscribed and "tailored to remedy the harm shown." *Nat'l Treasury Employees Union v. Yeutter*, 918 F.2d 968, 977 (D.C. Cir. 1990).

### 2.  The Plaintiff Has Failed to Demonstrate That It Will Suffer
###     Irreparable Harm Absent Interim Injunctive Relief

The plaintiff contends that in the small, specialized field of hazardous materials disposal, the DOE's withdrawal of consent "immediately raises questions within the industry – and most importantly, among Toxco's customers – about the continued ability of Toxco to store and dispose of wastes."  Pl.'s Mot. at 12.  The plaintiff asserts that the industry will assume that safety or responsibility concerns must have led to the cancellation of the subcontract, particularly given the DOE's failure to offer any explanation for its reversal.  *Id.*; Pl.'s Reply at 12.  In addition to these reputational injuries, the plaintiff asserts that the DOE's withdrawal of consent threatens the plaintiff's eligibility to serve as the subcontractor for another ARC project, the cleanup of the North Field at the SPRU facility.  Pl.'s Mot. at 13.  The plaintiff maintains that any economic harm it suffers will be irreparable because it has no contractual relationship with the DOE on which it could sue to recover its losses.  *Id.* at 13-14.

The defendant counters that the plaintiff's complaints of reputational harm are too speculative to establish irreparable harm.  Def.'s Mot. at 23.  Furthermore, the defendant argues that the plaintiff has neither demonstrated that the withdrawal of consent from one project would bar the plaintiff from working on the North Field or any other project, nor established that the reversal of the DOE's withdrawal of consent would result in the plaintiff's selection for the North Field project.  *Id.* at 21-22.  Finally, the defendant asserts that the plaintiff's complaints of lost business are unaccompanied by a claim of any imminent threat to the survival of its business, as necessary to give rise to irreparable harm.  *Id.* at 22.

Turning first to the plaintiff's claims of reputational harm, it is well-established that "reputational injury can be used to establish irreparable harm in certain circumstances."  *Trudeau v. Fed. Trade Comm'n*, 384 F. Supp. 2d 281, 297 (D.D.C. 2005), *aff'd*, 456 F.3d 178 (D.C. Cir.

2006) (citing *Patriot, Inc. v. U.S. Dep't of Hous. & Urban Dev.*, 963 F. Supp. 1, 5 (D.D.C. 1997); 11A FED. PRAC. & PROC. § 2948.1). "However, as with all other forms of irreparable harm, the showing of reputational harm must be concrete and corroborated, not merely speculative." *Id.* (citing *Bristol-Myers Squibb Co. v. Shalala*, 923 F. Supp. 212, 215 (D.D.C. 1996); *Aeronautical Indus. Dist. Lodge 776, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Gen. Dynamics Corp.,* 738 F. Supp. 1038, 1041 (N.D. Tex. 1990)); *see also Brodie v. U.S. Dep't of Health & Human Servs.*, 2010 WL 2222431, at *8-9 (D.D.C. June 4, 2010) (observing that "[m]erely conclusory allegations of stigma do not suffice to establish imminent injury").

The plaintiff's claims of reputational harm are based solely on the uncorroborated and speculative assertions made in an affidavit of David Eaker, one of the plaintiff's vice-presidents. *See* Eaker Aff. ¶¶ 33-38. Although Eaker asserts that "it is the logical and inevitable assumption" that the DOE's withdrawal of consent will raise concerns about the plaintiff's operations, *id.* ¶ 34, and that the absence of an explanation for the DOE's action will lead to "the assumption, within the industry, that DOE knows something they aren't telling about Toxco," *id.* ¶ 35, he offers nothing to substantiate his conjecture about what the industry will assume, *see generally id.* Likewise, although Eaker states that "[i]ndications of such [reputational] damage have already come to Toxco's attention," *id.* ¶ 35, he fails to specify what these "indications" are or the manner in which they indicate that the plaintiff's reputation has been harmed, *see generally id.*

Given the numerous factors that could have resulted in the DOE's withdrawal of consent, the plaintiff has simply not established that the industry will inevitably assume that the withdrawal of consent reflects some deficiency in the plaintiff's operations. The plaintiff does

not assert that it has lost or will lose any potential or existing clients because of the withdrawal of consent and, in fact, does not point to a single concrete manifestation of the reputational injury it is purportedly suffering. *See* Pl.'s Mot. at 12-14; Pl.'s Reply at 12. Accordingly, the court concludes that the plaintiff's claims of reputational harm are far too vague, speculative and uncorroborated to support a finding of irreparable harm.

As for the plaintiff's assertions of economic harm, the court notes that plaintiff has offered little to support its claim that the DOE's withdrawal of the consent threatens its participation in any other projects. *See* Pl.'s Mot. at 12-13; Pl.'s Reply at 12. Like the plaintiff's allegations of reputational injury, the plaintiff's contention that the DOE's withdrawal of consent precluded it from obtaining work on the North Field project is based solely on unsupported and conclusory assertions contained in the Eaker affidavit. *See* Eaker Aff. ¶ 36 (stating, "I understand that ARC will continue [to] use [another company] as a waste disposal subcontractor [on the North Field project], because DOE had withdrawn consent to use Toxco"); *id.* ¶ 37 (stating, "Toxco is informed and believes that ARC would select it to act as subcontractor for the North Field, if DOE will permit it to do so"). Indeed, the plaintiff itself acknowledges that it "has not been debarred from all government or DOE contracting," Pl.'s Mot. at 9 n.3 (emphasis removed), and that the DOE continues to allow the plaintiff to serve its disposal needs on other projects, *id.* at 8.

Moreover, even if the DOE's withdrawal did cause the plaintiff to lose the North Field project, the plaintiff has not shown that this economic loss, even if irretrievable and even when coupled with the losses resulting from the termination of the subcontract itself, is sufficiently severe so as to constitute irreparable harm. "To demonstrate irreparable injury, a plaintiff must show that it will suffer harm that is 'more than simply irretrievable; it must also be serious in

terms of its effect on the plaintiff.'" *Hi-Tech Pharmacal Co. v. U.S. Food & Drug Admin.*, 587

F. Supp. 2d 1, 11 (D.D.C. 2008) (quoting *Gulf Oil Corp. v. Dep't of Energy*, 514 F. Supp. 1019,

1026 (D.D.C. 1981)); *accord Robinson-Reeder v. Am. Council on Educ.*, 626 F. Supp. 2d 11, 14

(D.D.C. 2009); *Sandoz, Inc. v. Food & Drug Admin.*, 439 F. Supp. 2d 26, 31-32 (D.D.C. 2006);

*see also Wis. Gas Co. v. Fed. Energy Regulatory Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985)

(noting that to warrant emergency relief, the harm must be certain, great, actual and imminent).

Purely economic harm is not considered sufficiently grave under this standard unless it will

"cause extreme hardship to the business, or even threaten destruction of the business." *Gulf Oil*,

514 F. Supp. at 1025 (observing that "some concept of magnitude of injury is implicit in the

[standard for issuing a preliminary injunction]"); *see also, e.g.*, *LG Electronics, U.S.A., Inc. v.

Dep't of Energy*, 679 F. Supp. 2d 18, 35-36 (D.D.C. 2010) (stating that "[e]ven assuming [the

plaintiff] will not be able to recover monetary damages from DOE . . . the financial impact [the

plaintiff] claims it will suffer does not rise to the level of irreparable harm" as those losses

represented "a minuscule portion of the company's worldwide revenues"); *Coal. for Common

Sense in Gov't Procurement v. United States*, 576 F. Supp. 2d 162, 169-70 (D.D.C. 2008)

(holding that the plaintiff's claims of lost income did not rise to the level of irreparable harm

because the losses amounted to a fraction of the plaintiff's overall business); *Sandoz*, 439 F.

Supp. 2d at 32 (holding that even if the court were to credit the plaintiff's claims of $31 million

in irretrievable lost sales during the pendency of the litigation, that economic loss was

insufficiently severe in the context of the plaintiff's overall business operations to warrant a

finding of irreparable harm); *Apotex, Inc. v. Food & Drug Admin.*, 2006 WL 1030151, at *15-17

(D.D.C. Apr. 19, 2006) (concluding that the plaintiff's lost sales during the pendency of the

litigation, even if irretrievable, were insufficiently severe to constitute irreparable harm); *cf.*

*Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1295 (D.C. Cir. 2009) (noting the "general rule that economic harm does not constitute irreparable injury").

In this case, the plaintiff has offered no indication of the magnitude of economic harm it has suffered or will suffer as a result of the DOE's withdrawal of consent. *See* Pl.'s Mot. at 12-14; Pl.'s Reply at 12. The plaintiff has not provided the court with any measure of the income it has lost or will lose as a result of the termination of the subcontract or the denial of the North Field project. *See* Pl.'s Mot. at 12-14; Pl.'s Reply at 12. Nor has the plaintiff offered any indication of what effect these losses have had or will have on its business operations. *See* Pl.'s Mot. at 12-14; Pl.'s Reply at 12. Accordingly, the plaintiff has not established that its economic losses are sufficiently severe to constitute irreparable harm.

In sum, the plaintiff's claims of reputational and economic harm are insufficient to support a finding of irreparable harm. This failure, standing alone, is sufficient to warrant denial of the plaintiff's motion for a preliminary injunction. *See Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (observing that "[a] movant's failure to show any irreparable harm is . . . grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief"); *see also Pan Am Flight 73 Liaison Group v. Dave*, 2010 WL 1889167, at *15 (D.D.C. May 12, 2010) (holding that the plaintiff's failure to demonstrate that "it will suffer irreparable harm without an injunction, a prerequisite for the extraordinary relief it seeks" was "fatal to its request for a preliminary injunction") (citing *Chaplaincy*, 454 F.3d at 297).

### 3. The Remaining Factors Do Not Warrant Awarding Preliminary Injunctive Relief

Because the plaintiff has not demonstrated that it would suffer irreparable harm absent a preliminary injunction, the court will not undertake an extensive analysis of the remaining

factors relevant to this analysis. *See Chaplaincy of Full Gospel Churches*, 454 F.3d at 297;

*Fraternal Order of Police Library of Cong. Labor Comm. v. Library of Cong.*, 639 F. Supp. 2d

20, 25 (D.D.C. 2009) (holding that "[b]ecause [the] plaintiffs cannot establish that the Merger

will cause irreparable harm . . . the Court need not address the remaining preliminary injunction

factors, and . . . concludes that the motions for preliminary injunctions must be denied").

The court notes, however, that the plaintiff has also failed to demonstrate a substantial

likelihood of success on the merits. Although, as previously discussed, the court cannot

conclude at this juncture that § 701(a)(2) and § 704 bar the plaintiff's APA claims, *see supra* Part

III.A.2, there remains significant uncertainty as to whether the plaintiff is entitled to judicial

review under the APA, given the potential availability of alternative adequate remedies and the

absence of any judicially manageable standards for reviewing the DOE's withdrawal of consent,[9]

*see RCM Techs., Inc. v. U.S. Dep't of Homeland Sec.*, 614 F. Supp. 2d 39, 46 (D.D.C. 2009)

(holding that the plaintiff had no likelihood of success on the merits because his challenges did

not constitute "final agency action" and were therefore not reviewable under the APA).

Likewise, it is far from clear that the plaintiff will ultimately be able to demonstrate that it has a

protectable property interest that triggers due process protections, or that it was deprived such an

interest without due process of law. *See supra* Part III.A.3.

The court has also considered the remaining factors of the preliminary injunction analysis

and concludes that neither factor weighs strongly in favor of granting such relief. As for the

---

[9] For instance, although the defendant failed to address the statutory framework as required to demonstrate that the DOE's action was committed to agency discretion by law, the applicable regulations indicate that the DOE's consent was merely permissive rather than mandatory. *See* DOE Order 435.1 (providing that exemptions authorizing the use of non-DOE facilities "may be approved"); *see also Wheelabrator Corp. v. Chafee*, 455 F.2d 1306, 1317 (D.C. Cir. 1971) (holding that an agency inaction was not reviewable because the applicable statute and regulations merely permitted the agency to take such action and therefore committed the matter to agency discretion by law).

balance of the equities, the defendant has credibly asserted that both it and the public will be harmed by the entry of a preliminary injunction because such relief would disrupt the DOE's ongoing efforts to decontaminate the SPRU facility. *See* Def.'s Mot. at 24. Thus, the court concludes that the plaintiff has failed to establish its entitlement to preliminary injunctive relief and denies the plaintiff's motion for a preliminary injunction.

## IV. CONCLUSION

For the foregoing reasons, the court denies the defendant's motion to dismiss and denies the plaintiff's motion for a preliminary injunction. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 20th day of July, 2010.

RICARDO M. URBINA
United States District Judge