**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| TOXCO, INC., | : | |
| | : | |
| Plaintiff, | : | Civil Action No.:    09-1925 (RMU) |
| | : | |
| v. | : | Re Document Nos.: 27, 33 |
| | : | |
| STEVEN CHU *et al.*, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

**GRANTING THE DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY
JUDGMENT; GRANTING THE DEFENDANTS' MOTION TO STRIKE THE PLAINTIFF'S SUR-REPLY**

**I.  INTRODUCTION**

This case is before the court on the defendants' motion to dismiss as moot or, in the

alternative, for summary judgment.  The plaintiff, Toxco, Inc., commenced this action against

the Department of Energy and the Secretary of the Department of Energy, alleging that the

defendants' actions violated the Administrative Procedure Act ("APA") and the Due Process

Clause of the Fifth Amendment.  The defendants move to dismiss these claims pursuant to

Federal Rule of Civil Procedure 12(b)(1), alleging that the court lacks jurisdiction because the

plaintiff's claims are moot.  In the alternative, the defendants move for summary judgment under

Rule 56.  Because the plaintiff's APA claim is moot, the court grants the defendants' motion to

dismiss as to that claim.  With respect to the plaintiff's remaining Due Process claim, the court

grants the defendant's motion for summary judgment.

## II. BACKGROUND

### A. Factual Background

The Department of Energy ("DOE") oversees the disposal of radioactive waste at nuclear waste facilities across the country. *See* 42 U.S.C. § 7133(a)(8)(A)-(E). One such facility is the Separations Process Research Unit ("SPRU"), which operated from 1950 to 1953 as a pilot plant to research the chemical extraction of uranium and plutonium from irradiated uranium. A.R. at 69.[1] These operations contaminated the SPRU facility and the surrounding environment with radioactive material, resulting in the need to remediate the site. *Id.*

In October 2004, the DOE awarded a contract for several waste disposal operations to Accelerated Remediation Company ("ARC"), with individual projects to be specified in task orders. *See id.* at 1-62. The contract permitted ARC to subcontract with other entities, provided that the DOE formally consented to each individual subcontract. *Id.* at 47 (incorporating by reference 48 C.F.R. § 52.244-2, which requires an agency's Contracting Officer to consent before a contractor may enter into a subcontract). In September 2007, the DOE issued Task Order No. DE-AT30-07CC60013, SP15 ("Task Order SP15"), requiring ARC to engage in environmental remediation of approximately fifteen acres in the SPRU land areas. *See generally* A.R. at 63-105. Specifically, Task Order SP15 required the cleanup of radioactively and chemically contaminated soil from two areas at SPRU: the Lower Level Railbed and the Lower Level Parking Lot. *Id.* at 69.

In keeping with the terms of the DOE-ARC contract, in the summer of 2008 ARC subcontracted with Energy*Solutions*, a Utah company, to complete the waste disposal work under Task Order SP15. *See generally id.* at 346-48. Later that summer, ARC sought and

---

[1]       Citations to "A.R." refer to the Administrative Record.

received the DOE's permission to exit its subcontract with Energy*Solutions* as part of a cost-savings initiative. *See generally id.* at 349-51, 401-05; *see* Defs.' Mot. to Dismiss or, in the Alternative, for Summ. J. ("Defs.' Mot.") at 8-9. ARC then solicited bids from other subcontractors that wished to engage in the Task Order SP15 remediation work at SPRU. A.R. at 402. In June 2009, Toxco, Inc. ("Toxco" or "the plaintiff"), a Tennessee company, submitted a bid to perform the Task Order SP15 work. *See generally id.* at 397-411. Pursuant to federal acquisition regulations and DOE guidelines, ARC required the DOE's consent before it could enter into a subcontract with Toxco. *Id.* at 47. On August 11, 2009, the DOE issued a letter giving its formal consent to the subcontract. *Id.* at 450 ("Consent Order"). The Consent Order included the following provision:

> This consent shall in no way relieve the prime contractor of any obligations or responsibilities it may otherwise have under the contract or under law, shall neither create any obligation of the Government to, nor privity of contract with, the subcontractor or vendors, and shall be without prejudice to any right or claim of the Government under the prime contract. This consent does not constitute a determination as to the acceptability of the subcontract or the allowability of costs.

*Id.*

On August 12, 2009, having received the DOE's formal consent, ARC entered into a Purchase Order subcontract for the Task Order SP15 remediation work with Toxco. *See generally id.* at 451-63. The period of performance for the subcontract ran through December 31, 2009. *Id.* at 452. The subcontract also incorporated by reference a federal regulation titled "Termination for Convenience of the Government," which allowed the government to "terminate performance of work under this contract in whole or, from time to time, in part if the Contracting Officer determines that a termination is in the Government's interest." *See id.* at 454.

A week later, on August 19, 2009, the DOE reversed course and withdrew its consent for the ARC-Toxco subcontract. *See id.* at 498-500. Swiftly thereafter, ARC cancelled its

subcontract with Toxco.  *Id.* at 501-03.  ARC subsequently re-contracted with Energy*Solutions*

for completion of the remainder of Task Order SP15's remediation project at SPRU.  Def.'s Mot.

at 12.  By June 12, 2010, Energy*Solutions* had completed the work contemplated by Task Order

SP15.  *Id.*

### B.  Procedural History

The plaintiff commenced this action in October 2009, asserting that the DOE's

withdrawal of consent to the ARC-Toxco subcontract was both an arbitrary and capricious

agency action in violation of the APA and a deprivation of property in violation of the Due

Process Clause of the Fifth Amendment.  *See generally* Compl.  Upon filing its complaint, the

plaintiff also moved for a preliminary injunction requiring the DOE to reinstate its consent to the

subcontract so that it could continue with work on the subcontract.  *See generally* Pl.'s Mot. for

Preliminary Injunction.  The defendants moved to dismiss the complaint.  *See generally* Defs.'

Mot. to Dismiss.  In July 2010, the court issued a memorandum opinion denying the defendants'

motion to dismiss and denying the plaintiff's motion for a preliminary injunction.  *See generally*

Mem. Op. (July 20, 2010).

In September 2010, the defendants filed a second motion to dismiss under Rule 12(b)(1),

asserting that the plaintiff's claims are moot.  *See* Defs.' Mot. at 15-20.   In the alternative, the

defendants move for summary judgment on all of the plaintiff's claims.  *Id.* at 20-30.  With the

defendants' motion now ripe for review, the court turns to the applicable legal standards and the

parties' arguments.[2]

## III.  ANALYSIS

### A.  The Court Grants the Defendants' Rule 12(b)(1) Motion to Dismiss the Plaintiff's APA Claim for Mootness

### 1.  Legal Standard for a Motion to Dismiss for Mootness

Under Rule 12(b)(1), a party may move to dismiss a case on grounds of mootness.

*Comm. in Solidarity with People of El Sal. v. Sessions*, 929 F.2d 742, 744 (D.C. Cir. 1991);

*Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1060 (Fed. Cir. 1995); *Am.*

*Historical Ass'n v. Peterson*, 876 F. Supp. 1300, 1308 (D.D.C. 1995).  Article III's case-or-

controversy requirement prohibits courts from issuing advisory opinions or decisions based on

hypothetical facts or abstract issues.  *Flast v. Cohen*, 392 U.S. 83, 96 (1968).  "The doctrine of

mootness is a logical corollary of the case or controversy requirement[.]"  *Better Gov't Ass'n v.*

*Dep't of State*, 780 F.2d 86, 90 (D.C. Cir. 1986).  In cases where challenged conduct ceases and

"there is no reasonable expectation that the wrong will be repeated, . . . it becomes impossible for

the court to grant any effectual relief whatever to the prevailing party, and any opinion as to the

legality of the challenged action would be advisory."  *City of Erie v. Pap's A.M.*, 529 U.S. 277,

287 (2000).  Accordingly, a court may not rule on the merits of a case in which the claim for

---

[2]     The plaintiff filed a sur-reply without first seeking leave of the court.  *See generally* Pl.'s Reply
Memorandum .  The defendants moved to strike the sur-reply.  *See generally* Defs.' Mot. to
Strike.  In response, the plaintiff sought leave of the court to file its sur-reply.  *See generally* Pl.'s
Opp'n to Defs.' Mot. to Strike.  There is no automatic right to file a sur-reply in the Federal Rules
of Civil Procedure or in the Local Rules of this Court.  *Amobi v. D.C. Dep't of Corr.*, 257 F.R.D.
8, 9 (D.D.C. 2009).  Rather, a party seeking to file a sur-reply must seek leave of the court.  *Lewis
v. Rumsfeld*, 154 F. Supp. 2d 56, 61 (D.D.C. 2001).  In addition, the party seeking to file a sur-
reply must show that the reply filed by the moving party raised new arguments that were not
included in the original motion.  *Longwood Vill. Rest., Ltd. v. Ashcroft*, 157 F. Supp. 2d 61, 68
n.3 (D.D.C. 2001).  After reviewing the proposed sur-reply, the court determines that the plaintiff
has not raised any arguments which were not already raised in its opposition.  Accordingly, the
court grants the defendants' motion to strike the plaintiff's sur-reply.

relief is moot.

Courts must evaluate mootness "through all stages" of the litigation in order to ensure that a live controversy remains. *21st Century Telesis Joint Venture v. F.C.C.*, 318 F.3d 192, 198 (D.C. Cir. 2003) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 191 (2000) and *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)). As a result, "[e]ven where litigation poses a live controversy when filed, the [mootness] doctrine requires a federal court to refrain from deciding it if 'events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'" *Id.* (quoting *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990)).

A case is moot when "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *City of Erie*, 529 U.S. at 287 (internal quotations omitted). An intervening event may render a claim moot if (1) there is no reasonable expectation that the conduct will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violations. *Pharmachemie B.V. v. Barr Labs., Inc.*, 276 F.3d 627, 631 (D.C. Cir. 2002); *Sellers v. Bureau of Prisons*, 959 F.2d 307, 310 (D.C. Cir. 1992). A case is not moot, however, so long as any single claim for relief remains viable, as the remaining live issues satisfy the case-or-controversy requirement. *Tucson Med. Ctr. v. Sullivan*, 947 F.2d 971, 978 (D.C. Cir. 1991) (internal quotations and citations omitted). The burden of establishing mootness rests on the party raising the issue, and it is a heavy burden. *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953); *Motor & Equip. Mfrs. Ass'n v. Nichols*, 142 F.3d 449, 458-59 (D.C. Cir. 1998).

### 2. The Plaintiff's APA Claim Is Moot Because the Work Contemplated by the ARC-Toxco Subcontract Has Been Completed

The defendants argue that the plaintiff's claim is moot because the remediation work contemplated by the ARC-Toxco subcontract has now been fully performed by a different subcontractor. Defs.' Mot. at 17-18. The plaintiff does not contest the fact that the subcontract has been completed, but rather asks the court to require that the defendants hire the plaintiff as a contractor for future remediation work at the SPRU site. *See* Pl.'s Opp'n at 4-5. More specifically, the plaintiff argues that there may be additional opportunities for Toxco to obtain work at the SPRU site, as cleanup work is not expected to conclude until the end of 2011. *Id.* In addition, the plaintiff responds that this court could still grant meaningful relief by rendering a declaratory judgment against the defendants. *Id.* at 4.[3]

This Circuit has held that a claim seeking specific performance of a contract is moot if the services contemplated by the contract have already been rendered. *Columbian Rope Co. v. West*, 142 F.3d 1313, 1316 (D.C. Cir. 1998). Other circuits have reached similar conclusions. *See, e.g.*, *Fauconniere Mfg. Corp. v. Sec'y of Def.*, 794 F.2d 350, 351-52 (8th Cir. 1986) (holding that a plaintiff's challenge to the Secretary of Defense's award of contracts was mooted by completion of the contract, noting that "[t]here is therefore nothing left to enjoin"); *James Luterbach Constr. Co. v. Adamkus*, 781 F.2d 599, 602 (7th Cir. 1986) (holding that a plaintiff's action was mooted because the contract had been 98 percent completed); *Allis-Chalmers Corp. v. Arnold*, 619 F.2d 44 (9th Cir. 1980) (determining that the plaintiff's action was moot because the contract at issue had been substantially completed). In addition, declaratory relief is generally

---

[3]     The plaintiff also requests a "financial award[] to cure the contractual deficiency" as relief for the alleged APA violation. Pl.'s Opp'n at 4. The APA, however, only allows courts to grant equitable or declaratory relief. *See* 5 U.S.C. § 702; *Hubbard v. Adm'r, Envtl. Prot. Agency.*, 982 F.2d 531, 532-35 (D.C. Cir. 1992) (en banc) (holding that a suit for money damages may not be brought under the APA).

unavailable in cases in which the underlying issue has been mooted by the passage of time. *Columbian Rope Co.*, 142 F.3d at 1316-17 (stating that "[n]either injunctive relief *nor declaratory relief* on the legality of the contract would affect the parties in any meaningful way because the contract has been fully performed") (emphasis added). Rather, the "potential of declaratory relief alone cannot save an action from mootness if the object of the suit is not some underlying policy, but instead an isolated agency action." *Id.* at 1317 n.3 (citing *City of Houston v. Dep't of Hous. & Urban Dev.*, 24 F.3d 1421, 1429 (D.C. Cir. 1994)). Here, the plaintiff does not contest the fact that the contract period has elapsed and the work contemplated by the contract has been fully completed. *See* Pl.'s Opp'n at 4-5. Task Order SP15 provided for the receipt and disposal of radioactive waste generated in two areas: the Lower Level Railbed and the Lower Level Parking Lot of the SPRU site. A.R. at 69. On or about June 14, 2010, Energy*Solutions* completed disposal of the contaminated waste from the lower levels of the SPRU site. Defs.' Mot. at 17-18.

Because the subcontract work has been completed, the court cannot order specific performance of the ARC-Toxco subcontract.[4] *Id.* at 1316-17. Because time has mooted the underlying action, moreover, declaratory relief is similarly unavailable. *Id.* at 1317 n.3.

**3. The Plaintiff's Claims Are Not Capable of Repetition, Yet Evading Review**

The plaintiff argues that its action is reviewable because its claims are capable of repetition and evade judicial review. Pl.'s Opp'n at 5. More specifically, the plaintiff argues that

---

[4]     The plaintiff also asks the court to order performance of future remediation work at the SPRU site. Pl.'s Opp'n at 4. Enjoining performance of an existing contract is an extraordinary remedy that is granted only in exceptional circumstances. *See, e.g.*, *Kakaes v. George Washington Univ.*, 790 A.2d 581, 584 (D.C. 2002). Here, the plaintiff asks the court to fashion an entirely new contract out of whole cloth. *See* Pl.'s Opp'n at 4. Enjoining performance of a contract that does not yet exist is, to the court's knowledge, unheard of. Because the court is unwilling to fashion such unprecedented relief, the court denies the plaintiff's request.

the challenged action was too short in its duration to be fully litigated, and that there is a reasonable expectation that Toxco could be subject to the same action in the future. *Id.* The plaintiff contends that waste disposal continues at the SPRU facility, and it is therefore reasonable that Toxco would submit a future bid for an additional waste disposal contract. *Id.* at 6. The defendants reply that these speculative assertions fail to establish a reasonable expectation that the same type of controversy will arise again. Defs.' Reply at 5.

An action that is otherwise moot may be reviewed if it is "capable of repetition, yet evading review." *S. Pac. Terminal Co. v. Interstate Commerce Comm'n*, 219 U.S. 498, 515 (1911). This exception to the mootness doctrine requires that the plaintiff show, inter alia, that there is a reasonable expectation that the same plaintiff would be subjected to the same agency action again. *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975); *Pharmachemie*, 276 F.3d at 633 (citing *Norman v. Reed*, 502 U.S. 279, 288 (1992)); *Pub. Utils. Comm'n of Cal. v. Fed. Energy Regulatory Comm'n*, 236 F.3d 708, 714 (D.C. Cir. 2001). A reasonable expectation cannot rest on an attenuated probability that a series of specific events will occur. *Pharmachemie*, 276 F.3d at 633-34.

Although the plaintiff contends it is reasonable that it will submit a bid for future waste disposal work at the SPRU facility and that it might suffer the same injury, the plaintiff's allegation rests upon a precarious stack of contingencies. In order for a "recurrent identical agency action[]" to occur, *Pub. Utils. Comm'n of Cal.*, 236 F.3d at 715, (1) a contractor would have to solicit proposals for subcontractor remediation work in other areas of the SPRU site before the project finishes at the end of 2011, (2) Toxco would have to bid on that work, (3) the contractor would have to select Toxco to perform the work, (4) the DOE would have to give their consent to hire Toxco, and (5) the DOE would have to subsequently withdraw that consent in an

9

allegedly capricious manner. The plaintiff has not provided the court with any evidence to

support its conclusion that any of these contingencies may come to pass. The plaintiff, therefore,

has not established that a "reasonable expectation" that the agency action is capable of repetition.

*Pharmachemie*, 276 F.3d at 633-34. Because the plaintiff cannot satisfy the second prong of this

test, its APA claims are moot. Accordingly, the court grants the defendants' motion to dismiss

the plaintiff's APA claims under Rule 12(b)(1).

### B. The Court Grants Summary Judgment for the Defendants on the Plaintiff's Due Process Claims

#### 1. Legal Standard for Summary Judgment

Summary judgment is appropriate when the pleadings and evidence show "that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);

*Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are

"material," a court must look to the substantive law on which each claim rests. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine dispute" is one whose resolution

could establish an element of a claim or defense and, therefore, affect the outcome of the action.

*Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable

inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true.

*Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere

existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion

for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make

a showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to

the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

The nonmoving party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006). Indeed, for the court to accept anything less "would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial." *Greene*, 164 F.3d at 675.

### 2. The Plaintiff Holds No Property Interest Under the Due Process Clause

The defendants contend that the plaintiff's subcontract does not trigger any property interest under the Due Process Clause. Defs.' Mot. at 28. The defendants argue that the ARC-Toxco subcontract did not obligate, guarantee or imply that any services would be purchased. *Id.* They further note that the subcontract "expressly reserved the ability of the Government to terminate performance of work in whole or in part." *Id.* The plaintiff counters that the ARC-Toxco subcontract created a valid property interest that the government abrogated without affording it any due process, thus violating the Fifth Amendment.[5] Pl.'s Opp'n at 15.

The Due Process Clause of the Fifth Amendment prevents the federal government from depriving any person of property without due process of law. U.S. CONST. amend. V. To state a claim for deprivation of property without due process of law, the plaintiff must possess a

---

5       This issue is appropriate for resolution on summary judgment because it turns on questions that are legal, not factual, in nature. *See Empresa Cubana Exportadora de Alimentos y Productos Varios v. U.S. Dep't of Treasury*, 606 F. Supp. 2d 59, 76 (D.D.C. 2009) (holding that the question of whether or not plaintiffs had a cognizable property interest under the Fifth Amendment is a legal question that is appropriate for summary judgment), *aff'd on different grounds*, 638 F.3d 794 (D.C. Cir. 2011).

property interest that triggers the Fifth Amendment's due process protections. *C & E Servs., Inc. of Wash. v. D.C. Water & Sewer Auth.*, 310 F.3d 197, 200 (D.C. Cir. 2002). In general, a valid contract is "property," and the rights protected by such a contract may fall under the protections of the Due Process Clause. *Lynch v. United States*, 292 U.S. 571, 579 (1934). Not all contractual rights automatically give rise to a constitutional interest under the Due Process Clause, however. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Rather, constitutionally cognizable interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source" such as "understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* "[T]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577.[6]

In due process cases that arise out of contracts with the government, courts require that a claimant show a "legitimate claim of entitlement" to some benefit that is protected by independent state-law rules, relevant contractual language and applicable federal regulations. *C & E*, 310 F.3d at 200 (state law); *Sys. Contrs. Corp. v. Orleans Parish Sch. Bd.*, 148 F.3d 571, 572 (5th Cir. 1998); 148 F.3d at 574 n.16 (contractual language) *Baja Contractors, Inc. v. City of Chicago*, 830 F.2d 667 n.9 (federal regulations). Courts consider the extent to which these

---

[6]      Courts have analyzed due process claims that arise from contracts for the provision of public services within the framework developed in cases involving contracts for personal employment with the government. *See, e.g.*, *C & E Servs.*, 310 F.3d at 200-201; *Sys. Contrs. Corp.*, 148 F.3d at 572; *Ervin & Assocs., Inc. v. Dunlap*, 33 F. Supp. 2d 1, 9-10 (D.D.C. 1997). The same framework applies when, as here, the alleged property interest derives from a subcontract and not a direct contract with the government. *See Baja Contractors, Inc. v. City of Chicago*, 830 F.2d 667 (7th Cir. 1987) (applying *Roth* to a subcontractor's due process claim).

independent legal rules commit the government to protecting the rights created by the contract. *Perry v. Sindermann*, 408 U.S. 593, 601-02 (1972); *Roth*, 408 U.S. at 578; *Conset Corp. v. Cmty. Servs. Admin.*, 655 F.2d 1291, 1295-96 (D.C. Cir. 1981). The fewer the number of conditions that limit the government's ability to withdraw from its contractual obligations, moreover, the less tangible a subcontractor's right to a constitutionally protected property interest. *See Roth*, 408 U.S. at 578. In addition, if the government is vested with complete discretion as to whether or not it must undertake any of its contractual obligations, the plaintiff does not have a constitutional property interest in that contract. *Compare Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1295-96 (5th Cir. 1994) (holding that a contractor did not hold any cognizable property interest in petitioning a procurement agency when the government had retained complete discretion in deciding whether to allow the contractor to petition) *and Christ Gatzonis Elec. Contractor, Inc. v. N.Y. City Sch. Constr. Auth.*, 23 F.3d 636, 640 (2d Cir. 1994) (holding that a plaintiff had no property interest in payment under a contract that granted the government discretion to withhold such payments) *with Baja Contractors, Inc. v. City of Chicago*, 830 F.2d 667, 677 n.9 (7th Cir. 1987) (concluding that a plaintiff had a property interest in a subcontract in part because federal regulations limited the government's ability to use its discretion in rejecting the subcontract).

Here, the government's Consent Order emphasized that the defendant had not committed itself to any contractual obligations towards Toxco, stating that its consent "shall neither create any obligation of the Government to, nor privity of contract with, the subcontractor or vendors." A.R. at 450. The language of the Consent Order expressly disclaims any notion that the government committed itself to purchasing any services under the subcontract. The Consent Order, therefore, did not create an "understanding[]" between the parties that "secure[d] certain benefits and that support[ed] claims of entitlement to those benefits." *Roth*, 408 U.S. at 577.

13

Moreover, the ARC-Toxco subcontract did not impose any limitations on the defendant's ability to withdraw its consent to the subcontract. The subcontract incorporated by reference a federal regulation titled "Termination for Convenience of the Government," which permitted the defendant to "terminate performance of work under this contract in whole or, from time to time, in part if the Contracting Officer determines that a termination is in the Government's interest." *See* A.R. at 454 (incorporating 48 C.F.R. § 52.249-2). This federal regulation in no way limits the circumstances in which the government may withdraw its consent to the subcontract. Rather, the applicable federal regulations vested the government with the unfettered discretion to withdraw its consent for the subcontract. *See* 48 C.F.R. § 52.249-2(5). These facts strongly support the conclusion that the defendant was not constitutionally bound to preserve any benefits created by the ARC-Toxco subcontract. *See Roth*, 408 U.S. at 578; *Christ Gatzonis*, 23 F.3d at 640. In sum, neither the Consent Order nor the subcontract itself indicate that the government committed itself to any understandings that secure certain benefits to Toxco. Therefore, Toxco does not have a "legitimate claim of entitlement" to any contractual rights that may fall under the aegis of the Due Process Clause. Because the plaintiff does not have a constitutionally protected property interest in the subcontract, the defendants' motion for summary judgment on the plaintiff's due process claim is granted.

## IV. CONCLUSION

For the foregoing reasons, the court grants the defendants' motion. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 11th day of August, 2011.

RICARDO M. URBINA
United States District Judge